UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

JOSE ALBERTO GONZALEZ HERNANDEZ, *et al.*,

　　　　　Petitioners,

　v.

KRISTI NOEM, *et al.*,

　　　　　Respondents.

Case No. 2:25-cv-02486-RFB-NJK

**ORDER GRANTING PRELIMINARY INJUNCTION**

　　　Pending before the Court is Petitioners Jose Alberto Gonzalez Hernandez, Alfonso Mario Rios Rios, and Lidio Lopez Lopez's Motion for a Temporary Restraining Order or Preliminary Injunction (ECF No. 2), challenging the lawfulness of their detention at Nevada Southern Detention Center (NSDC) in the custody of Federal Respondents. The Court ordered Respondents to show cause why a preliminary injunction should not be granted by December 18, 2025. See ECF No. 6. The Court granted Respondents an extension of the deadline until December 24, 2025. ECF No. 8. On December 23, 2025, Federal Respondents sought an additional extension, which Petitioners opposed, and the Court found a failure to establish good cause for the further extension, therefore the December 24, 2025 deadline remained in effect. ECF No. 11. To date, Respondents have not filed a response. For the following reasons, the Court grants the Motion and orders Respondents to immediately release Petitioners from detention.

　　　The Court makes the following findings of fact based on the Verified Petition, sworn declarations, and immigration documents filed by Petitioners. See ECF Nos. 1, 1-1. Petitioners are three individuals originally from Mexico who are longtime residents of the United States with deep familial, financial, and community ties to this country. They were each arrested by Immigration and Customs Enforcement ("ICE") officers in recent months, far from any border or

port of entry, and detained without bond pursuant to the government's new policy, effective July 8, 2025, of subjecting all noncitizens who entered the country without inspection to mandatory detention during the pendency of removal proceedings, which can take months or years. The new policy is based on the government's reinterpretation of the statutory text of Immigration and Nationality Act ("INA"), specifically 8 U.S.C. § 1225(b)(2)(A), in contravention of decades of consistent agency practice and current regulations, which previously guaranteed noncitizens similarly situated to Petitioners the opportunity to be released on bond under 8 U.S.C. § 1226(a). See Escobar Salgado v. Mattos, No. 2:25-CV-01872-RFB-EJY, 2025 WL 3205356, at *5-6 (D. Nev. Nov. 17, 2025) (describing the government's new detention policy based on its reinterpretation of § 1225(b)(2)(A)).

The Department of Homeland Security ("DHS") has alleged each Petitioner is inadmissible as "an alien present in the United States who has not been admitted or paroled" pursuant to 8 U.S.C. § 1182(a)(6)(A)(i) and asserts that they are subject to detention under § 1225(b)(2)(A). While detained, each Petitioner requested a custody redetermination hearing (*i.e.* bond hearing) before an immigration judge of the Las Vegas Immigration Court, and an immigration judge found that each of them should be released on bond rather than remain in detention, because they pose no danger to the community, threat to national security, or risk of flight. Nevertheless, the immigration judges denied Petitioners release on bond based on the Board of Immigration Appeals (BIA) precedential decision in Matter of Yajure Hurtado, 29 I&N Dec. 216 (BIA 2025) ("Hurtado"), which formally adopted the government's new interpretation of § 1225(b)(2)(A) and binds immigration judges (IJs) to categorically reject bond for individuals like Petitioners. On November 3, 2025, IJ Daugherty held a bond hearing and stated on the record that if Hurtado did not deprive the immigration court of jurisdiction, he would grant Petitioner Gonzalez Hernandez release on bond in the amount of $1,500. On December 12, 2025, IJ Roberts held a bond hearing and held in the alternative that if Hurtado did not deprive the immigration court of jurisdiction, she would have granted Petitioner Rios-Rios release on bond in the amount of $1,500. On December 12, 2025, IJ Roberts held a bond hearing and held in the alternative that if Hurtado did not deprive the immigration court of jurisdiction, she would have granted Petitioner Lopez-Lopez release on

1  bond in the amount of $3,000. Because of Hurtado, Petitioners remain in detention in the custody
2  of Federal Respondents at NSDC, despite the Immigration Court's findings that the government
3  has no individualized justifications for continuing to detain them.

4  As an initial matter, the Court has habeas jurisdiction to review Petitioners challenge to the
5  lawfulness of their detention, because the relevant jurisdiction stripping provisions of the INA, 8
6  U.S.C. § 1252 do not apply. See Escobar Salgado, 2025 WL 3205356, at *8-10. The Court also
7  fully incorporates by reference its prior finding that administrative exhaustion is excused as futile
8  due to the BIA's decision in Hurtado. Jacobo Ramirez v. Noem, No 2:25-cv-02136-RFB-MDC,
9  2025 WL 3270137, at *5-6 (D. Nev. Nov. 24, 2025).

10  The Court finds that Petitioners have satisfied the Winter factors and are therefore entitled
11  to a preliminary injunction ordering their immediate release from detention subject to the bond
12  conditions imposed by the IJs. Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 22 (2008)
13  (setting forth factors for preliminary injunction). To obtain a preliminary injunction, a plaintiff
14  must establish four elements: (1) a likelihood of success on the merits, (2) that the plaintiff will
15  likely suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities
16  tips in its favor, and (4) that the public interest favors an injunction. Wells Fargo & Co. v. ABD
17  Ins. & Fin. Servs., Inc., 758 F.3d 1069, 1071 (9th Cir. 2014), as amended (Mar. 11, 2014) (citing
18  Winter, 555 U.S. at 22).

19  The Court finds Petitioners have established a likelihood of success on the merits of their
20  statutory and due process challenges to their continued detention. This Court previously found in
21  Escobar Salgado that the government's new interpretation of § 1225(b)(2)(A) is incorrect given
22  the statutory text and structure, and that its new policy of detaining noncitizens like Petitioners
23  violates § 1226(a) of the INA, its implementing regulations, and the Due Process Clause of the
24  Fifth Amendment. 2025 WL 3205356, at *10-26 (D Nev. Nov. 17, 2025). The Court incorporates
25  by reference and adopts those same findings and legal conclusions here. Id.

26  First, in regard to the INA challenge, the Court finds that Petitioners, as long-term U.S.
27  residents with significant ties to the country who were arrested in the interior years after entering,
28  are entitled to be released on bond under § 1226(a) and its implementing regulations. Escobar

Salgado. 2025 WL 3205356, at *10-22.

Further, the Court finds Petitioners have established a likelihood of success on the merits of their due process challenge to their ongoing detention after IJs found the government has no individualized justification for continuing to detain them. The procedural due process factors under Mathews v. Eldridge, 424 U.S. 319 (1976), weigh heavily in favor of Petitioners because (1) the private interest affected is the fundamental liberty interest in being free from imprisonment; (2) the risk of erroneous deprivation is extraordinarily high where ICE and DHS agency officials have sole, unguided, and unreviewable discretion to detain Petitioners despite the immigration court's determination that their detention is not warranted, nor any process for Petitioners to challenge the exercise of that discretion; (3) the government's interest in enforcing immigration laws is served by the individualized determinations by an immigration court, based on a review of evidence presented by the government and the noncitizen, as to whether an individual is dangerous or at risk of fleeing removal proceedings, under existing, well-established procedures, *and* the government has no interest in the unjustified deprivation of a person's liberty. Id. at 334-35; See also Rodriguez Diaz v. Garland, 53 F.4th 1189, 1206 (9th Cir. 2022) (collecting cases and applying the Mathews test to a constitutional challenge to detention under 8 U.S.C. § 1226(a)). Finally, because Respondents have asserted no individualized justification—let alone a special or compelling justification—to continue to deprive Petitioners of their physical liberty, this Court finds that Petitioners are currently detained in violation of their substantive due process rights. See Escobar Salgado, 2025 WL 3205356, at *25.

The Court also finds Petitioners have clearly established they face imminent irreparable injury in the absence of preliminary injunctive relief. "It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" Melendres v. Arpaio, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting Elrod v. Burns, 427 U.S. 347, 373 (1976)). Hence, "[w]hen an alleged deprivation of a constitutional right is involved, most courts hold no further showing of irreparable injury is necessary." Vasquez Perdomo v. Noem, 148 F.4th 656, 689 (9th Cir. 2025) (citation omitted). Since this Court has already concluded that Petitioners are being detained in violation of their constitutional due process rights, it follows "inexorably" that Petitioners have

carried their burden as to irreparable harm. See Hernandez v. Sessions, 872 F.3d 976, 995 (9th Cir. 2017). Likewise, the minimal, if not nonexistent, burden on the government of adhering to established procedures under § 1226(a), as compared to the preventable human suffering, *e.g.*, financial and emotional burdens on both Petitioners, their families, and their communities, in addition to the fundamental harm of arbitrary executive detention, demonstrates that the balance of the equities and public interest tip sharply in Petitioners' favor. Id. at 995-96 ("the public interest benefits from an injunction that ensures that individuals are not deprived of their liberty and held in immigration detention because of . . . likely unconstitutional process.").

Injunctive relief "should be no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs before the court." E. Bay Sanctuary Covenant v. Biden, 993 F.3d 640, 680 (9th Cir. 2021) (citation modified). "Where relief can be structured on an individual basis, it must be narrowly tailored to remedy the specific harm shown[.]" Id. (citation omitted). The federal habeas corpus statute "does not limit the relief that may be granted to discharge of the applicant from physical custody." Carafas v. LaVallee, 391 U.S. 234, 238 (1968). "Its mandate is broad with respect to the relief that may be granted." Id. "It provides that '[t]he court shall ... dispose of the matter as law and justice require.'" Id. (quoting 28 U.S.C. § 2243). Here. the Court finds that the specific harm suffered by Petitioners—continued detention pursuant to the government's incorrect statutory interpretation and unlawful policy after they established that their continued detention was not warranted before the Las Vegas Immigration Court, is remedied by ordering their immediate release, subject to the bond conditions imposed by the IJs as to each Petitioner, and a preliminary injunction preventing Respondents from continuing to prevent Petitioners release on the basis that they are detained under § 1225(b)(2).

Under Federal Rule of Civil Procedure 65(c), a court "may issue a preliminary injunction . . . only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). "Despite the seemingly mandatory language, 'Rule 65(c) invests the district court with discretion as to the amount of security required, if any.'" Johnson v. Couturier, 572 F.3d 1067, 1086 (9th Cir. 2009) (quoting Jorgensen v. Cassiday, 320 F.3d 906, 919 (9th Cir. 2003)).

"In particular, 'the district court may dispense with the filing of a bond when it concludes there is no realistic likelihood of harm to the defendant from enjoining his or her conduct.'" Id. (citation modified) (quoting Jorgensen, 320 F.3d at 919). Respondents have not argued releasing Petitioners on bond will be costly. Therefore, the Court declines to impose bond beyond the amount that the IJs set under § 1226(a).

Based on the foregoing **IT IS HEREBY ORDERED** that Petitioners' Motion for a Preliminary Injunction is **GRANTED.**

**IT IS FURTHER ORDERED** that Respondents shall **RELEASE** Petitioners from detention subject to the bond conditions imposed by the IJs no later than **December 30, 2025** at **6:00 p.m.**

The Court has received notice of the hardship other petitioners have incurred in their efforts to satisfy bond, therefore, **IT IS FURTHER ORDERED** that Petitioners have until **February 13, 2026**, to satisfy the monetary bond conditions

**IT IS FURTHER ORDERED** that Respondents are **ENJOINED** from denying Petitioners release on bond on the basis that they are subject to mandatory detention pursuant to 8 U.S.C. § 1225(b)(2)(A).

**IT IS FURTHER ORDERED** that the parties shall file a **joint notice of compliance** with this Order by **December 31, 2025**.

**IT IS FURTHER ORDERED** that on or before **January 13, 2026**, the parties shall file a stipulated proposed scheduling order for full briefing on the merits of the Petition.

**DATED:** December 30, 2025.

_____
**RICHARD F. BOULWARE, II**
**UNITED STATES DISTRICT JUDGE**